646 A.2d 1228

**Alfred L. ROMANO and Allen L. Gross, d/b/a Alalla Partnership, Appellants,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued April 6, 1994.

Filed Aug. 26, 1994.

---

7. Due to the disposition of this case, we do not address issue two.

546

Arthur S. Alexion, Glenside, for appellants.

Judith Daley, Wilkes–Barre, for appellee.

Before CIRILLO, JOHNSON and CERCONE, JJ.

CIRILLO, Judge:

Alfred L. Romano and Allen L. Gross, d/b/a Alalla Partnership (collectively as "Alalla"), appeal from the order entered in the Court of Common Pleas of Luzerne County denying their request for counsel fees pursuant to 42 Pa.C.S.A. § 8371 (Purdon's Supp.1991). We vacate and remand for proceedings consistent with this opinion.

The underlying facts are not in dispute: On March 27, 1992, a building owned by Alalla and insured by appellee Nationwide Mutual Fire Insurance Company (Nationwide) was partially damaged by fire. The insurance policy in effect at the time of the fire was designated as a "Businessowners Special Policy" and listed "Alfred L. Romano, Jr. & Allen L. Gross, d/b/a Alalla" as the named insured(s). Nationwide's limit of liability for the insured premises was $175,000.00. Nationwide offered to pay out $73,214.54 for the loss; Alalla refused the offer and estimated its damages at $94,426.37. On June 8, 1992, Nationwide paid $30,000.00 to Alalla in advance on the final settlement figure. Thereafter, the parties submitted the claim for appraisal. As mandated by 40 P.S. § 636, the insurance policy issued to Alalla contained the following appraisal clause:

**Appraisal**

If we and you disagree on the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial

appraiser. The two appraisers will select an umpire.... The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding....

\* \* \* \* \* \*

If there is an appraisal, we will retain our right to deny the claim.

After inspecting the damages to the insured property and after reviewing the parties' appraisers' reports, the umpire set the amount of the loss at $87,900.46 (hereinafter referred to as "the umpire's award").

Nationwide refused to pay the full amount of the award.[1] Alalla, therefore, filed a petition in the Court of Common Pleas of Luzerne County to confirm the appraisal award. 42 Pa.C.S.A. § 7342(b). Upon service of the petition, Nationwide paid $43,646.52 to Alalla, the balance of the umpire's award. Alalla then moved for counsel fees pursuant to 42 Pa.C.S.A. § 8371, *infra*, on the grounds that Nationwide, by refusing to comply with the umpire's award, forced Alalla to hire counsel and file suit in order to enforce the umpire's award. In its supporting brief, Alalla alleged that "[s]uch conduct is Bad Faith *per se* since it is a violation of the Unfair [Insurance] Practices Act (the UIPA)." 40 P.S. § 1171.1 *et seq.*

Judge Stevens denied the motion on the basis that the trial court had no jurisdiction to hear alleged violations of the UIPA. Judge Stevens rationalized the dismissal as follows:

Because the courts have no authority to determine whether an insurer violated the [UIPA], it reasonably follows that

1. Nationwide's appraiser concurred with the umpire's award insofar as it reflected the replacement cost of the damage, but refused to pay the total award until, and only if, Alalla commenced repairing and/or replacing the damaged property, as per the requirements of the insurance policy. Nationwide then requested that, in addition to the replacement cost award entered by the umpire, the appraisers submit actual cash value (ACV) figures to the umpire. In the meantime, Nationwide paid $13,253.94 to Alalla to bring the total advanced to $43,253.94, the ACV set by Nationwide's appraiser less the $1,000.00 deductible.

this Court may not determine whether the Defendant's actions violated the [UIPA]. The Supreme Court of Pennsylvania has decided that because there is a system of sanctions established under the [UIPA], there is no need for the [A]ct to be supplemented by a judicially created cause of action. See, *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981).

This timely appeal followed.[2] Alalla presents four issues for our consideration:

(1) Whether an insurer which forces its insured to hire counsel and institute litigation in order to enforce a clear right under the law and the policy commits bad faith?

(2) Whether an insurer which forces its insured to hire counsel and institute litigation in order to enforce a measure of damages repeatedly and unwaveringly sustained by the Pennsylvania Appellate Courts for over sixty (60) years, commits bad faith?

(3) Whether the insurance policy issued by Respondent to Appellant incorporates the substantive laws of the Commonwealth including the Unfair Insurance Practices Act?

(4) Whether the standards defined in the Unfair Insurance Practices Act should be used by the Courts as the standard for the public and legislative policy of the Commonwealth and used to establish bad faith per se?

Notwithstanding the above-enumerated questions presented, we note that because Judge Stevens dismissed Alalla's petition due to lack of jurisdiction and, hence, did not reach the merits of Alalla's petition, Alalla's fourth question presented is the only issue properly before this court; that is, whether the courts of this Commonwealth are permitted to entertain petitions for counsel fees, costs, punitive damages,

**2.** This order is final and appealable because Alalla's petition to confirm the umpire's award was rendered moot by Nationwide's subsequent payment of the balance of the award. The sole remaining issue before the trial court, therefore, concerned Alalla's request for counsel fees. We, therefore, limit our review to the trial court's order denying/dismissing the same.

etc., pursuant to 42 Pa.C.S.A. § 8371, based upon the bad faith conduct of insurers as defined in the UIPA or other similar laws?[3] This court cannot decide, therefore, whether Nationwide's tender of an amount less than the full amount of the umpire's award prior to Alalla's filing of the instant action, without prejudice to Alalla's right to recover a larger amount, constitutes bad faith. *See Kauffman v. Aetna Casualty & Sur. Co.*, 794 F.Supp. 137 (E.D.Pa.1992).

Initially, we note our standard of review in this case. The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Furthermore, the findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a jury verdict and will not be disturbed on appeal absent error of law or abuse of discretion. *Stahli v. Wittman*, 412 Pa.Super. 281, 603 A.2d 583 (1992); *Reuter v. Citizens & Northern Bank*, 410 Pa.Super. 199, 599 A.2d 673 (1991); *Porter v. Kalas*, 409 Pa.Super. 159, 597 A.2d 709 (1991). When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and, conversely, all unfavorable inferences rejected. *Short v. Metropolitan Life Ins. Co.*, 339 Pa.Super. 124, 488 A.2d 341 (1985).

The Pennsylvania Supreme Court has long held that an insurer must act with the "utmost good faith" toward its insured. *Fedas v. Insurance Co. of Pa.*, 300 Pa. 555, 558, 151 A. 285, 286 (1930); *see also Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989); *Cowden v. Aetna Casualty & Sur. Co.*, 389 Pa. 459, 134 A.2d 223 (1957). This heightened duty is necessary because of the special relationship between an insurer and its insured and the very

3. Following question four of its Statement of Questions Involved, Alalla acknowledges that the trial court did not reach the merits of its motion for counsel fees, finding instead that it lacked jurisdiction to examine the instant case in light of alleged UIPA violations.

nature of the insurance contract. The insurer's duty of good faith, therefore, is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement. *See, e.g., Gray v. Nationwide Mut. Ins. Co.,* 422 Pa. 500, 223 A.2d 8 (1966).

In *D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981), the case relied upon by the trial court in this case, the Supreme Court of Pennsylvania declined to create a common law remedy for bad faith on part of insurers. *Id.,* 494 Pa. at 507, 431 A.2d at 970. In 1990, the Pennsylvania legislature responded by enacting 42 Pa.C.S.A. § 8371, which created a statutory remedy for bad faith conduct:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim....
>
> (2) Award punitive damages against the insurer.
>
> (3) *Assess court costs and attorney fees against the insurer.*

42 Pa.C.S.A. § 8371 (emphasis added).

Although the language of Section 8371 is not clear as to whether the statute creates an independent cause of action or merely allows a court to provide an additional remedy if it determines that an insurance company has acted in bad faith, the emerging jurisprudence treats Section 8371 as creating a separate and distinct cause of action. *See Kauffman, supra; Lombardo v. State Farm Mut. Auto. Ins. Co.,* 800 F.Supp. 208 (E.D.Pa.1992); *see also* 14 Summ.Pa.Jur.2d *Insurance* § 22:9 (1994) (42 Pa.C.S.A. § 8371 provides for a separate and independent cause of action against an insurer). This issue is of no real concern in this case, however, because Alalla did not initiate the underlying action via a petition for counsel fees pursuant to 42 Pa.C.S.A. § 8371, but rather, commenced the trial court proceedings via its petition to confirm the umpire's arbitration award.

An examination of the record suggests that after Nationwide tendered the balance of the umpire's award, Alalla made an oral motion for counsel fees before Judge Stevens pursuant to 42 Pa.C.S.A. § 8371.[4]  Supporting and opposing briefs were filed with the Court Administrator of Luzerne County and made part of the record.  *See* Pa.R.A.P. 1921.

It is clear that the UIPA and the Department of Insurance Regulations can only be enforced by the State Insurance Commissioner and not by way of private action.  A closer question, however, is whether an insured, like Alalla, may point to "bad faith" conduct as defined in various provisions of the UIPA as a basis for recovery under 42 Pa.C.S.A. § 8371.

One particular section of the UIPA specifically prohibits insurers from:

> Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons.

40 P.S. § 1171.5(a)(10)(vii) (1974).  Based on the foregoing, Alalla argues that Nationwide committed bad faith by compelling it to incur the expense of retaining counsel in order to enforce the umpire's appraisal award.

Prior to the creation of a statutory cause of action for an insurer's bad faith under 42 Pa.C.S.A. § 8371, effective July 1, 1990, Pennsylvania courts prohibited insureds from asserting UIPA violations as grounds for recovery under any other theory.  *See D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981); *Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600 (1988); *Hardy v. Pennock Ins. Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471 (1987).  In *Hardy,* an insured attempted to raise a violation of the UIPA before this court; in response, we made it clear that, at that time, such an action was not properly within our jurisdiction.  In so holding, we stated:

---

**4.**  Evidence that Alalla orally requested counsel fees is contained in the certified copy of the docket entries, as follows: "[p]etitioners' (Alalla's) *request* for counsel fees ... is hereby denied." (emphasis added).

[A]ppellants sought statutory relief before the courts rather than requesting the Department of Insurance to review the action to determine whether a hearing was warranted. This act was contrary to *D'Ambrosio [v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981)], and the express administrative procedure set forth in [*J.C. Penney Cas. Ins. Co. v. Com. Dept. of Ins.,* 43 Pa.Cmwlth. 360, 402 A.2d 558 (1979)]. Therefore, we hold that the court's dismissal ... was proper with regard to the [UIPA claim].

*Hardy,* 365 Pa.Super. at 220, 529 A.2d at 478.

Since the enactment of 42 Pa.C.S.A. § 8371, neither this court nor the Pennsylvania Supreme Court has spoken to this precise issue. Section 8371 does not define the term "bad faith." To ascertain the meaning of "bad faith" as it is used in Section 8371, therefore, the courts must look to either Pennsylvania case law interpreting and applying the statute and/or to the Pennsylvania rules of statutory construction. In this case, we examine the latter.

Whenever possible, we must interpret a statute according to the plain meaning of its language. In that light, the rules of statutory construction provide, in part, that "words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903; *Commonwealth v. Bell,* 512 Pa. 334, 339, 516 A.2d 1172, 1175 (1986). In the insurance context, the term "bad faith" has acquired a universally acknowledged meaning:

**Insurance.** "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Black's Law Dictionary 139 (6th ed. 1990) (citations omitted). *See also* 3 Appleman, *Insurance Law & Practice* § 1612 at 368 (1967 & Supp.1991) (bad faith means a frivolous or unfounded

refusal to pay, lack of good faith investigation into fact, and failure to communicate with the claimant).

The parameters of Section 8371 may also be discerned by reference to analogous Pennsylvania insurance law. Specifically, "when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... (5) ... other statutes upon the same or similar subjects." 1 Pa.C.S.A. § 1921. Section 1171.5 of the UIPA defines unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. Particularly, and as noted above, Section 1171.5(a)(10)(vii) prohibits insurers from "[c]ompelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons." 40 P.S. § 1171.5(a)(10)(vii). While the UIPA does not specifically refer to an insurer's "bad faith," the Supreme Court of Pennsylvania has utilized that term to describe conduct within the UIPA's reach. *See D'Ambrosio, supra.*

Although the trial court lacks the requisite jurisdiction to impose sanctions under the various provisions of the UIPA and insurance regulations, we find that the rules of statutory construction permit a trial court to consider, either *sua sponte* or upon the request of a party, the alleged conduct constituting violations of the UIPA or the regulations in determining whether an insurer, like Nationwide, acted in "bad faith." *See MacFarland v. United States Fid. & Guar. Co.,* 818 F.Supp. 108 (E.D.Pa.1993) (holding that the alleged conduct constituting violations of the UIPA and the regulations can be considered in determining whether the insurer acted in bad faith under 42 Pa.C.S.A. § 8371); *Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104 (E.D.Pa.1992) (holding that courts may look to other statutes upon the same or similar subjects to define bad faith under 42 Pa.C.S.A. § 8371); *Coyne v. Allstate Ins. Co.,* 771 F.Supp. 673 (E.D.Pa.1991) (holding that provisions of the UIPA can be utilized to describe conduct constituting bad faith).

■ This court offers no opinion as to whether Nation-wide, in fact, committed bad faith by withholding payment pending a requested determination of the actual cash value of the loss. This decision, therefore, is limited to the jurisdictional, albeit unwarranted, concerns of the trial court. We find that a trial court, when evaluating a Section 8371 petition or motion for costs and/or counsel fees for the "bad faith" of an insurer, may look to: (1) other cases construing the statute and the law of "bad faith" generally; (2) the plain meaning of the term(s) used in the statute; and/or (3) other statutes upon the same or similar subjects (like the UIPA in this case), *MacFarland, supra, Rottmund, supra,* and *Coyne, supra.* The fact that Alalla makes reference to a provision of the UIPA to illustrate the alleged bad faith conduct of Nationwide does not divest the trial court of its jurisdiction. The trial court, therefore, erred in finding that it lacked jurisdiction to hear the matter. *Stahli, supra; Reuter, supra; Porter, supra.*

Order vacated and case remanded for proceedings consistent with this opinion.

JOHNSON, J., concurs in the result.