## Boyd v. Windsor Insurance Co.

C.P. of Fayette County, no. 1110 of 1997, G.D.

*William M. Radcliffe,* for plaintiff.
*John W. Zotter,* for defendant.

SOLOMON, *J.,* May 10, 1999—This matter comes before the court as a result of the preliminary objections of the defendant, Windsor Insurance Company, to the plaintiff, Lawrence Boyd's, third amended complaint. The defendant's preliminary objections are based on Boyd's failure to plead a viable bad faith claim under 42 Pa.C.S. §8371 and on Boyd's lack of standing.

## DISCUSSION

When ruling on preliminary objections, the court must generally accept as true all well and clearly pleaded

facts, but not the pleader's conclusion or averments of law. *Santiago v. Pennsylvania National Mutual Casualty Insurance Co.,* 418 Pa. Super. 178, 613 A.2d 1235 (1992). The question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Id.* at 179, 613 A.2d at 1235. "Any doubt as to whether demurrer should be sustained should be resolved in favor of overruling demurrer." *Id.* at 179, 613 A.2d at 1235.

Instantly, the defendant contends that the plaintiff has not pled a viable bad faith claim under 42 Pa.C.S. §8371. It is the position of the defendant that there is no affirmative duty on the part of an insurer to notify its insureds of all available benefits, and that a claim for bad faith must necessarily involve the refusal to pay a claim.

In support of its contention that an insurer need not inform an insured of all potential coverage, the defendant cites *Miller v. Keystone Insurance Co.,* 535 Pa. 531, 636 A.2d 1109 (1994) and *Dercoli v. Pennsylvania National Mutual Insurance Co.,* 520 Pa. 471, 554 A.2d 906 (1989). The Pennsylvania Supreme Court in *Dercoli* held that "[t]he duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim." *Dercoli, supra,* 520 Pa. at 478, 554 A.2d at 909. However, thereafter in *Miller,* the court restricted the holding in *Dercoli* since it was factually distinguishable. Specifically, the *Miller* court indicated that in *Dercoli,* "the

insurer's knowing and purposeful misrepresentation was [central] to this court's determination that the insurers were bound to disclose all of the benefits to which the claimant was entitled." *Miller, supra,* 535 Pa. at 537, 636 A.2d at 1112. The court then went on to hold that "in the absence of evidence of fraud, intentional deception, or the making of misleading statements, the employer has no affirmative duty to apprise a compensation claimant of any or all available benefits." *Id.* at 539, 636 A.2d at 1113. The defendant asserts that since it did not act as the plaintiff's counsel, as was the case in *Dercoli,* the *Dercoli* holding is inapplicable here.

The plaintiff takes the position that the present matter is distinguishable from both *Dercoli* and *Miller* because the alleged bad faith involved not only the failure to inform Boyd of potential coverage, but also the misrepresentation of coverage. In his brief, the plaintiff correctly points out that in order for us to decide whether the parameters of *Dercoli* and *Miller* apply here, we must first determine what constitutes bad faith under 42 Pa.C.S. §8371.

Bad faith is not defined in 42 Pa.C.S. §8371. The defendant notes that bad faith has been defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *Tenos v. State Farm Insurance Co.,* 716 A.2d 626, 631 (Pa. Super. 1998) (quoting *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 553, 646 A.2d 1228, 1232 (1994)). The plaintiff would have us adopt a more expansive definition of bad faith, one which encompasses not just the above definition, but would include conduct prohibited by the

Unfair Insurance Practices Act, 40 P.S. §1171.5(10)(i) et seq. He cites *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 646 A.2d 1228 (1994) to support the proposition that "the rules of statutory construction permit a trial court to consider, either sua sponte or upon the request of a party, the alleged conduct constituting violations of the UIPA or the regulations in determining whether an insurer . . . acted in 'bad faith.' " *Id.* at 554, 646 A.2d at 1233.

Despite the defendant's argument that bad faith must involve the denial of a claim, and that such was not the case here, we agree with the plaintiff. First, *Romano* does not say that the denial of a claim is the only circumstance under which a trial court may consider the UIPA or the regulations in defining bad faith. Rather the *Romano* court stated that

"We find that a trial court, when evaluating a section 8371 petition or motion for costs and/or counsel fees for the 'bad faith' of an insurer, may look to: (1) other cases construing the statute and the law of 'bad faith' generally; (2) the plain meaning of the term(s) used in the statute; and/or (3) other statutes upon the same or similar subjects (like the UIPA in this case) . . . ." *Id.* at 555, 646 A.2d at 1233; see also, *MGA Insurance Co. v. Bakos,* 699 A.2d 751 (Pa. Super. 1997).

Furthermore, we are not convinced that the defendant did not implicitly refuse to pay a claim when it determined that the plaintiff was not entitled to underinsured motorist benefits. Arguably, the so-called "erroneous position" that the rejection forms were valid could be construed as a refusal of the claim. Still, we would reiterate that *Romano* apparently does not require the denial of a claim for bad faith to exist.

Keeping in mind *Romano's* expansive view of bad faith, we return to the issue of whether the *Dercoli* holding is applicable here. As to that issue, we conclude that the defendant's assertion that its underinsured motorist rejection forms were valid, at the very least, raises the question of whether it was acting in a deceptive manner or making misleading statements. Such actions, if proven, would violate the UIPA and the regulations. See 40 P.S. §1171.5(10)(i), et seq.; 31 Pa.C. §§146.4(a), (b). They also leave open the possibility of recovery, thereby making demurrer inappropriate under the circumstances.

Admittedly, the defendant did not act as the plaintiff's counsel, unlike the situation in *Dercoli*. However, since *Miller* indicated that insurers would have a duty to disclose benefits where fraud, deception, or misleading statements were involved, a factual inquiry is necessary to determine if the present defendant had this duty. Hence, the uncertainty created by this question leads us to the conclusion that the demurrer should be overruled.

Lastly, as to whether the plaintiff is an appropriate class representative, the plaintiff correctly notes that this matter is to be decided at the class certification hearing. We indicated as much in our opinion of March 26, 1998, and this is in accordance with the Pennsylvania Rules of Civil Procedure. Rule 1705 of the Pennsylvania Rules of Civil Procedure provides that "[i]ssues of fact with respect to the class action allegations may not be raised by preliminary objections but shall be raised by the answer." *Id.* Thus, questions concerning the class representative shall be properly decided at the class certification hearing.

Wherefore, we will enter the following order.

## ORDER

And now, May 10, 1999, upon consideration of the preliminary objections filed by the defendant, it is hereby ordered and decreed that the same are denied.